UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HECTOR FERNANDEZ-TREJO,

Case No. 8:12-cv-02634-EAK-TBM

v.

DAYMI ALVAREZ-HERNANDEZ,

_____

## ORDER

This cause is before the Court on Petitioner's Emergency Motion for Writ of Arrest of the Minor Child. Petitioner seeks an order directing the Marshals to serve an arrest warrant to pick up a minor child (L.F.A.) for residence with the Petitioner pending final resolution of the Verified Petition for Return of Minor Child to Mexico and Issuance of Show Cause Order. (Dkt. 1). In support thereof, Petitioner filed a verified petition and also testified at an *ex parte* hearing set on November 29, 2012, at 10:30 a.m.

Having considered the verified petition and the exhibits thereto, and having heard the testimony of the Petitioner, the Court finds that Petitioner has sufficiently established, for purposes of this hearing on Petitioner's Emergency Motion for Writ of Arrest, the following facts:

1. Petitioner and Respondent were married in Cuba on December 7, 2001, and the marriage was later registered in Mexico. P.E. 1.[1] Although Respondent was born in Cuba, Petitioner testified that Respondent took several actions indicating she understood Mexico to be

_____

[1] All exhibits introduced at the hearing will be identified as [P.E. #].

her home (i.e., she obtained a driver license, registered to vote). Petitioner is unaware of any desire on behalf of Respondent to reside in Cuba since formally integrating in Mexico in 2002.

    2. Petitioner and Respondent remain to this date legally married, but were separated at the time of the alleged wrongful removal.

    3. The minor child (L.F.A.) is seven years old, and was born in Mexico on July 26, 2005. *See* P.E. 2. L.F.A. has lived in Mexico her entire life, until her mother took her to the United States.

    4. In 2007, Petitioner and Respondent (along with L.F.A) moved out of Petitioner's parents' house and into their own home in Juarez, Nuevo Leon, Mexico.

    5. The parties' marriage began to deteriorate and the couple fought constantly. Respondent was physically and verbally abusive to L.F.A. and Petitioner. Petitioner would sleep in a locked room at night because Respondent threatened to kill him on several occasions.

    6. On August 23, 2010, Petitioner reported this conduct to Mexico's equivalent of the Department of Children and Families, known in Mexico as "DIF." During the proceedings, Respondent tried to coerce L.F.A. to lie to authorities and tell them that Petitioner hits her.

    7. A psychologist recommended that Petitioner move out of the home to spare L.F.A. from the constant fighting. Sometime in August 2010, Petitioner moved back in with his parents (25 kilometers away), but continued to pay the housing and expenses for his familial household.

    8. Petitioner and Respondent reached an informal agreement on visitation. Although not in writing, the parties agreed that Petitioner would have custody on Wednesdays and weekends.

    9. L.F.A. would often cry when it was time to return to her mother because Respondent would yell and hit her a lot.

    10. Petitioner testified that sometime in 2010 or 2011, Respondent instituted formal proceedings in a Mexican court related to child support, but Petitioner could not testify whether it was a formal divorce proceeding. According to Petitioner, there was no adjudication of Petitioner's custodial rights of L.F.A. No documentation was provided to the Court to verify the nature of the proceedings. As a result of those proceedings, Petitioner was ordered to provide financial support to the Respondent and L.F.A. Petitioner testified that money is withdrawn from his paycheck and deposited into a bank account from which Respondent can withdraw funds.

    11. On August 10 2011, Respondent removed L.F.A. from Mexico without Petitioner's consent. Petitioner testified in great detail how he appeared at his house to pick up L.F.A. for visitation and both the minor child and Respondent had abandoned the residence. The residence was left in disarray, removing from the house all major appliances and belongings. *See* P.E. 3. Petitioner did not consent to the removal of L.F.A. from Mexico.

    12. Petitioner filed a complaint with the Mexican authorities in an effort to locate his

estranged wife and minor child. *See* P.E. 4.

13. The Respondent (L.F.A.'s mother) is now living in Largo, Florida.

14. Petitioner has taken temporary residence in the area pending resolution of this matter. Petitioner testified he is able to pay child support and other expenses for L.F.A.

This Court has the authority to issue an arrest warrant to pick up the minor child. Federal and state courts have concurrent jurisdiction to enforce the Convention on the Civil Aspects of International Child Abduction (the "Convention"), but any order removing a child from a person having physical control of the child must meet the applicable requirements of state law. Florida's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") permits the Court to enter such "orders as necessary to ensure the safety of the child and of any person ordered to appear under this section." Fla. Stat, § 61.523(3). Pursuant to the UCCJEA, "[i]f the court, upon the testimony of the petitioner or other witness, finds that the child is likely to imminently suffer serious physical harm or removal from this state, it may issue a warrant to take physical custody of the child." Fla. Stat. 61.534 (2). Other federal courts have issued arrest warrants after holding an emergency *ex parte* evidentiary hearing and ordered the minor child to reside with the petitioner pending resolution of the matter. *See, e.g., Moreno v. Martin*, 2008 WL 4716958, at * 7 (S.D. Fla. Oct. 23, 2008); *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1344 (S.D. Fla. July 18, 2002).

Based on the preliminary findings, the Court finds that Respondent will likely take action to remove L.F.A. from her current residence in Largo, Florida. An arrest warrant is necessary to ensure L.F.A. is not removed from this jurisdiction pending final resolution of the matter. Accordingly, it is

**ORDERED** that

1. The Court GRANTS Petitioner's Emergency Petition for Writ of Arrest and directs that the United States Marshals Service arrest the child at the address identified by the U.S. Department of State and that the child be placed in the temporary custody of Petitioner pending final resolution of the Verified Petition. The Marshals are given authority to enter the residence upon reasonable belief that the minor child is present therein.

2. The United States Marshals Service shall take possession of Petitioner's passport, the Respondent's passport, and the child's passport (or other travel papers) pending a final resolution of the matters raised in the Verified Petition. The Petitioner and L.F.A. must remain within 100 miles of Tampa, Florida, until such time as there has been a final adjudication on the merits of the Verified Petition.

3. A copy of this Order, the Petitioner's Emergency Motion for Writ of Arrest of the Minor Child and Verified Petition for Return of Minor Child to Mexico and Issuance of Show Cause Order, and the warrant must be served on Respondent immediately after L.F.A. is taken into physical custody.

4. The matter is set for a hearing on the merits of Petitioner's Verified Petition for Return of Minor Child to Mexico and Issuance of Show Cause Order on *Thursday Dec. 6th* at *10:30* a.m. in the Sam M. Gibbons U.S. Courthouse, Courtroom 14A, located at 801 North Florida Avenue, Tampa, Florida, 33602.

**DONE AND ORDERED** in Chambers in Tampa, Florida this *29th* day of November, 2012.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies furnished to: All Counsel of Record