UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HECTOR FERNANDEZ-TREJO,

Case No. 8:12-cv-02634-EAK-TBM

v.

DAYMI ALVAREZ-HERNANDEZ,

_____

## ORDER

The cause is before the Court on Petitioner's Verified Petition for Return of the Minor

Child to Mexico and Issuance of Show Cause Order filed on November 20, 2012. *See* Dkt. 1.

The Petitioner seeks the return of his seven-year old daughter ("L.F.A.") to Mexico, where he

and the Respondent were living at the time L.F.A. was born and where she was raised until last

year when she was taken to the United States without his consent. Acting as deliberately and

expediently as possible, in keeping with the spirit and purpose of the 1980 Hague Convention on

the Civil Aspects of International Child Abduction ("Hague Convention"), the Court held

evidentiary hearings on November 30, December 6 and December 10, 2012. Having considered

the testimony of the witnesses and all arguments of counsel, the Court finds that Petitioner met

his burden of proving that L.F.A. was wrongfully removed from Mexico within the meaning of

Article 3 of the Hague Convention. The Court, however, was not persuaded that Respondent

established the requisite facts to meet her burden of proving her affirmative defenses under the

applicable standard. For the reasons herein, this Court hereby GRANTS Petitioner's Verified

Petition and ORDERS that L.F.A., a minor child, be returned to Mexico with her father, Hector Fernandez-Trejo.

## DISCUSSION

"The Convention was adopted in 1980 to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." *Hanley v. Roy*, 485 F.3d 641 (11th Cir. 2007) (citing the Preamble to the Hague Convention). The drafters of the Hague Convention were concerned with, among other things, the proliferation of "legal kidnapping," where a child born to two spouses engaged in a bitter child custody dispute is uprooted from his or her home by one spouse to establish custody in a more favorable jurisdiction. Adair Dyer, *To Celebrate a Score of Years!*, 33 N.Y.U. J. Int'l L & Pol. 1, 5-6 (2000). "When a child has been wrongfully removed from his country of habitual residence, the [Hague] Convention through its implementing legislation, the International Child Abduction Remedies Act of 1988, 42 U.S.C. § 11603(b), provides the non-abducting parent with a remedy of return, intended to restore the parties to the pre-abduction status quo and deter parents from crossing borders in search of a more sympathetic forum for child custody proceedings." *United States v. Newman*, 614 F.3d 1232, 1235 at n. 1 (11th Cir. 2010) (quoting *Baren v. Beaty*, 526 F.3d 1340, 1344 (11th Cir. 2008)).

### The Petition for Wrongful Removal from Mexico

A person seeking to institute proceedings through the Hague Convention may file a petition for return of the child in any court authorized to exercise jurisdiction in the location where the child is residing at the time the petition is filed. 42 U.S.C. § 11603(b). A petitioner must show "by a preponderance of the evidence that the petitioner was exercising custody rights

at the time of removal and that the removal was wrongful." *Lops v. Lops*, 140 F.3d 927, 936

(11th Cir. 1998) (citing 42 U.S.C. § 11603(e)(1)(A)); *see also Pielage v. McConnell*, 516 F.3d

1282, 1286 (11th Cir. 2008). A petitioner meets his burden if he establishes: (1) the habitual

residence of the child immediately before the date of the allegedly wrongful removal or retention

was in the country to which return is sought; (2) the removal or retention breached the

petitioner's custody rights under the law of the child's habitual residence; (3) the petitioner was

actually exercising or would have been exercising custody rights of the child at the time of his or

her removal or retention; and (4) the child has not attained the age of 16 years." *Mendez Lynch v.*

*Mendez Lynch*, 220 F. Supp. 2d 1347, 1357 (M.D. Fla. 2002) *(*citing *Lops*, 140 F.3d at 936). The

first and last elements are not reasonably disputed in this case,[1] therefore, the Court will focus its

analysis on whether the removal of L.F.A. from Mexico breached Petitioner's "custody rights"

being exercised at the time of removal.

"The existence of rights of custody are determined by the law of the country in which the

child habitually resides at the time of removal." *Hanley*, 485 F.3d at 645. Citing to an English

translation of Mexican law, Petitioner urges the Court to find that Petitioner had joint custody of

L.F.A. at the time of the alleged wrongful removal to the United States. Specifically, Petitioner

cites to Articles 414 and 415 of the Civil Code of the Mexican State of Nuevo Leon:

---

[1] Respondent admits in her answer that L.F.A. was born in 2005 in Monterrey, Nuevo Leon, Mexico, and is presently seven years of age." *See* Dkt. 15 (admitting para. 9 of petition). Petitioner testified at great length during the hearing about the family's residence in the Punta Esmeralda neighborhood in Juarez, Nuevo Leon, Mexico, at which the Respondent and L.F.A. resided until her departure to the United States in 2011 to, as Respondent put it, give L.F.A. "a better life." There was no credible testimony from either the Petitioner or Respondent that Petitioner consented to L.F.A's departure to the United States. Instead, Respondent proffered a partially translated, unsigned settlement offer that, according to Respondent's own testimony, was never executed by the parties. Accordingly, the Court finds that Mexico was the "habitual residence" of L.F.A. and there was no "settled intention" to leave that behind for permanent residence in the United States. *See Ruiz v. Tenorio*, 392 F. 3d 1247, 1252-53 (11th Cir. 2004).

**Article 414.**  Parental authority/responsibility (patria potestas) is exerted jointly by both parents.

**Article 414 bis.**  In all cases where the mother does not live with the father of her children, she will have the right of preference to keep the children under seven years of age under her care, unless she practices prostitution, pimping or habitual drinking, suffers from a contagious disease or her antisocial behavior represents a serious danger for the health and morality of the children.

**Article 415 bis.**  Even if they do not have custody of the minors, those exerting parental authority/responsibility (patria potestas), have a right to coexist (spend time) with their descendants who will be asked for their opinion on the matter once they reach the age of twelve.  The exertion of this right depends on it not representing a risk for the minor and for the fulfillment of child-support obligations.  Personal relationships between the minor and his or her ancestors shall not be impeded without just cause.  Whoever has custody, has the obligation to respect, promote and allow the coexistence of the child with the non-custodial ancestor exerting parental authority/responsibility (patria potestas).

"Patria potestas," a legal concept derived from Roman law, provides for the joint exercise of parental authority. *Moreno v. Martin*, 2008 WL 4716958, at *9 (S.D. Fla. Oct. 23, 2008).  The right to exercise parental authority is distinguished from the right of custody because the mother of children under the age of seven years "h[as] the right of preference to keep the child[] . . . under her care," despite the clear right to coexist with both parents.  The right to coexist, if it means anything however, must mean that Respondent was not permitted under Mexican law to unilaterally decide to move L.F.A. to the United States, thus depriving Petitioner the ability to interact and coexist with L.F.A. in any meaningful way. *See generally Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000) (recognizing affidavits from Mexican lawyers stating that both parents must consent to the removal of a child under Mexican law).

Respondent urges this Court to consider the fact that Petitioner unsuccessfully attempted to restrict Respondent from leaving Mexico.  The decision permitting Respondent to travel with L.F.A. outside of Mexico, but which does not expressly permit Respondent to permanently relocate to the United States, does not lend support for Respondent to deprive Petitioner of the right to coexist and exercise authority over L.F.A. in Mexico.  There being no evidence that

Petitioner's parental rights have been terminated under Mexican law, or voluntarily relinquished by Petitioner, the Court finds that Petitioner has met his burden of establishing that L.F.A.'s removal to the United States breached his custodial rights. Exhibits 9a and 9b, which are English translations of orders from a Mexican court, do not establish the custody rights (in favor or against Petitioner) of L.F.A.

Although there was conflicting testimony, the Court finds that Petitioner was actually exercising his custody rights at the time of removal. A fact not disputed is that Petitioner and Respondent were not living together in marital bliss. Although the Court does not find sufficient evidence to support any of the competing allegations of abuse,[2] there is certainly enough evidence in the record to support a finding that Petitioner remained active in the life of L.F.A. Petitioner testified that he moved out of the family home to spare L.F.A. from the incessant fighting. He provided credible testimony that Petitioner and Respondent reached an informal, unwritten custody agreement by which he would have physical custody of L.F.A. every Wednesday and on weekends. Additionally, both Respondent and Petitioner testified that child support funds were transferred to a bank account to which Respondent had access.[3] Much can be debated about the level of quality involvement of both parents in L.F.A.'s life, but there is ample evidence that Petitioner was indeed involved in her life.[4] That is all that is required. *See, e.g.,*

---

[2]According to Respondent, there was little if any marital communication and Petitioner took steps to interfere with her relationship with L.F.A.; Petitioner even filing a formal complaint to have Respondent investigated for various charges of abuse. Petitioner claims to have taken these steps because Respondent would often yell at L.F.A. and, at times, physically abuse the child. Respondent fired back with her own accusations, testifying that she heard reports that Petitioner wore inappropriate attire (or none at all) in the presence of L.F.A.

[3]Respondent testified that access to the funds has been impaired as of recently, but she could not explain to the Court whether inadequate funds or a technology glitch (or something else) caused the impaired access.

[4]The Court also finds credible Petitioner's account of his efforts to locate L.F.A. and Respondent after their departure from Mexico. Petitioner testified that he found a Florida address

*Moreno*, 2008 WL 4716958, at \*9; *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1346-47 (S.D. Fla. 2002). It is unwise—perhaps even forbidden—for a district court to tread into to the dangerous territory of judging the manner in which a parent exercised his or her custody rights over a minor child for the purposes of determining a wrongful removal action under the Hague Convention. *Accord Friedrich v. Firedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996) ("Once [a district court] determines that the parent exercised custody rights in any manner, the court should stop-completely avoiding the question whether the patent exercised the custody rights well or badly.").

### Respondent's Affirmative Defenses to the Petition

Respondent raised two affirmative defenses to the petition. *See* Dkt. 15. Respondent's first affirmative defense is that the petition was served greater than one year from the date of removal from Mexico and L.F.A. has become settled in her new environment. *Id.* There is no dispute that L.F.A. has been in the United States for greater than one year (i.e., she moved here in August 2011), but that is not the end of the inquiry. The Eleventh Circuit has held that the one year limitations period in the Hague Convention can be equitably tolled "where the parent removing the child secreted the child from the parent seeking return." *Furnes v. Reeves,* 362 F.3d 702 (11th Cir. 2004); *see, e.g., Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1362-63 (M.D. Fla. 2002) (tolling the limitations period because the respondent absconded with children without notifying the petitioner). It is clear that Respondent took L.F.A. to the United States without the consent of Petitioner (even Respondent does not suggest otherwise). Additionally, there was no testimony that Respondent reached out to Petitioner to notify him of L.F.A.'s whereabouts. Instead, Respondent presented evidence of public filings, i.e., state court

---

left behind in the abandoned family residence in Nuevo Leon, Mexico. Petitioner discovered that Respondent was using an electronic debit card in Largo, Florida. Petitioner testified that he brought this information to the Mexican Central Authority and instituted the instant proceedings.

divorce proceedings[5] and a driver's license application, to support her argument that Petitioner was remiss in his pursuit to locate her. The Court rejects any argument that it was incumbent upon Petitioner to sift through the records of the DMV to locate the Respondent's driving records or any one of the twenty circuit courts in Florida to locate a divorce filing. Petitioner testified that he was only able to locate Respondent and L.F.A. with the help of the Mexican and United States Central Authorities.[6] Accordingly, the Court finds that the limitations period is appropriately tolled in this case and Respondent is unable to meet her burden of proving this defense.

Moreover, there is not sufficient evidence to find that L.F.A. is "well settled" in the United States as that term is used in the Hague Convention. Whether a child is "well settled" requires "substantial evidence of significant connections to the new environment." *In re Ahumada Cabrera*, 323 F. Supp. 2d 1303, 1313 (S.D. Fla. 2004). Courts consider the child's age, stability of the new residence, school attendance, stability of the mother's employment, and the presence of friends or relatives in the new environment to establish significant connections. *Id.* at 1314 ("In fact, *Lops* directs courts to look beyond a comfortable material existence and to

---

[5] Respondent filed for divorce in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida in a case styled, *Daymi Alverez-Hernandez v. Hector Jesus Fernandez-Trejo*, Case No. 12-DR-16792, pending before Judge Catherine Catlin. Petitioner filed a Notice of Hague Convention Proceedings Related to the Wrongful Removal of Minor Child, L.F.A. in that court. *See* Dkt. 22. Although I have the utmost confidence in Judge Catlin's ability to adjudicate the parties' divorce proceedings pursuant to The Uniform Child Custody Jurisdiction and Enforcement Act adopted in Florida, Section 61.519 of the Florida Statutes, it is my view that this Court was able to efficiently and expediently resolve the wrongful removal matter pursuant to a federal statute enacted to enforce a treaty entered into by the federal government with other sovereigns, including Mexico. All of the facts in this case counseled against abstention of federal jurisdiction of the matter in favor of the parallel state court action. *See Lops*, 140 F.3d at 942-43.

[6] On that point, the Court found the Office of Children's Issues of the Department of State (the "United States Central Authority") to be quite helpful in resolving this dispute. The United States Central Authority provided the Court with a treasure trove of valuable information by way of U.S. Network Judges who have compiled substantive resources to assist the Court in the timely and efficient resolution of these disputes.

consider the child's living environment, the involvement of the parents, active measures taken to

conceal the child's whereabouts, and the possibility of prosecution for conduct concealing the

child."). The testimony adduced at the hearing shows that L.F.A. was brought to Miami, Florida,

and then Largo, Florida, living in a total of three (3) residences in the roughly fifteen (15) months

since coming to the United States. L.F.A. speaks some English, attends elementary school in

Largo, Florida, and stays at home with a babysitter in the evening while Respondent goes to

work. Based on all the factors, and considering an *ex parte* interview with L.F.A.,[7] the Court

finds that L.F.A. is not well settled in the United States. *Mendez Lynch*, 220 F. Supp. 2d at 1363-

64 (finding children not well settled in the United States when they lived in seven locations in

only a couple years, even though they were attending school and making friends). Accordingly,

Respondent failed to meet her burden of proving her first affirmative defense.

Respondent's second affirmative defense is that L.F.A.'s return to Mexico would "expose

the child to physical or psychological harm or otherwise place the child in an intolerable

situation." Dkt. 15. Respondent must prove by clear and convincing evidence that returning to

Mexico would place L.F.A. in an "intolerable situation." 42 U.S.C. § 11603(e)(2)(A). An

"intolerable situation" under Article 13b of the Hague Convention encompasses, for example,

sexual abuse by a parent or other familial relative, *Grijalva v. Escayola*, 2006 WL 3827539, at *6

(M.D. Fla. Dec. 28, 2006) (citing Hague Convention, 51 Fed. Reg. 10494-01, 10510 (March 26,

1986)), or when returning the child would place her in a "zone of war, famine or disease[.]"

*Friedrich v. Freidrich*, 78 F.3d 1060, 1069 (6th Cir. 1996). The proper focus of the inquiry is the

effect on L.F.A. if she is returned to Mexico. *See Nunez-Escudero v. Tice-Menley*, 58 F.3d 374,

---

[7] The Court conducted an interview of L.F.A. in the presence of the Court's staff, a court reporter, and a certified Spanish interpreter. The Court notes that L.F.A. is a very intelligent and charming little girl. On balance, the Court finds that L.F.A. appears to love both of her parents and does not wish to be caught in the middle of the custody dispute.

377 (8th Cir. 1995).

As support for this defense, Respondent testified generally that there exists drug trafficking activity and gang violence in the proximal location of their residence in Nuevo Leon, Mexico.   Respondent even testified that on at least one occasion a stray bullet struck the residence.   Other than oblique references to the quality of life in Nuevo Leon, Mexico immediately surrounding the Petitioner's residence, there was no testimony that L.F.A. (or Petitioner or Respondent for that matter) was personally threatened or in immediate danger.   The living conditions of the surrounding area (even if as they are as deplorable as Respondent contends) will not satisfy the "intolerable conditions" defense by clear and convincing evidence. *See Avendano v. Smith*, 806 F. Supp. 2d 1149, 1177 (D.N.M. 2011) ("Although Mexico is more dangerous than the United States at this time, intolerable situation was not meant to encompass return to a home where living conditions are less palatable.").   Moreover, removing L.F.A. from her mother will not, standing alone, satisfy this burden. *See Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir. 1995).   Accordingly, the Court finds that Respondent failed to prove her second affirmative defense.

The Court will, therefore, order the return of L.F.A. to Mexico pursuant to Hague Convention.   Accordingly, it is

**ORDERED** that:

1. The Petitioner's Verified Petition for Return of the Minor Child to Mexico and Issuance of Show Cause Order is GRANTED;

2. L.F.A. shall be returned to Mexico in the custody of Hector Fernandez-Trejo no later than ten (10) days from the entry of this Order;

3. L.F.A. shall remain in the custody of Hector Fernandez-Trejo until the time of their departure to Mexico;

4. The passports (or other travel papers) belonging to Hector Fernandez-Trejo and L.F.A. shall be immediately returned. The passport belonging to Daymi Alverez-Hernandez shall be returned at

the opening of business on December 14, 2012.

5. The United States Marshals shall notify all pertinent local, state, and federal law enforcement officers that Hector Fernandez-Trejo has the lawful temporary custody to drive L.F.A. from Tampa, Florida across the border and into Mexico to return to his residence at Nuevo Leon, Mexico; and

6. Hector Fernandez-Trejo, within 10 days of his return to Mexico, shall submit to the appropriate Mexican court for jurisdiction to determine all custody and visitation rights relating to L.F.A., and divorce status between Hector Fernandez-Trejo and Daymi Alverez-Hernandez. Further, Hector Fernandez-Trejo, Daymi Alverez-Hernandez (if she returns to Mexico) and L.F.A. shall participate in psychological examinations as made available by the applicable Mexican authority.

**DONE AND ORDERED** in Chambers in Tampa, Florida this 10th day of December, 2012.


ELIZABETH A. KOVACHEVICH
United States District Judge


Copies furnished to: All Counsel of Record